1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8         FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   LINDA E. DIAZ,                         No. C 03-4198 CW

11          Plaintiff,                      ORDER GRANTING
                                            DEFENDANT'S MOTION FOR
12       v.                                 SUMMARY JUDGMENT AND
                                            DENYING PLAINTIFF'S
13   JO ANNE B. BARNHART,                   MOTION FOR SUMMARY
     Commissioner of Social Security,       JUDGMENT OR TO REMAND.
14

15          Defendant.

16   _____/

17

18       Plaintiff Linda Diaz moves for summary judgment or for

19   remand.  Defendant Jo Anne B. Barnhart in her capacity as

20   Commissioner of the Social Security Administration opposes

21   Plaintiff's motion and cross-moves for summary judgment.  Having

22   considered all the papers filed by the parties, the Court DENIES

23   Plaintiff's motion for summary judgment or to remand, and GRANTS

24   the Commissioner's motion for summary judgment.

                         BACKGROUND
25
     I.  Procedural History
26
         On May 4, 2000, Plaintiff applied for disability insurance
27
     benefits under Title II of the Social Security Act, alleging
28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

that she injured her back on February 10, 1998, when she attempted to lift a thirty-pound box at work.  She later argued that she was  unable to work until May 25, 2002, a closed period of over four years.  (Administrative Record (AR) 502). Plaintiff's application was denied initially and on reconsideration.  (AR 31-34, 36-39).  On April 3, 2003, a hearing was held before an administrative law judge at which Plaintiff, who was represented by counsel, appeared as a witness.  (AR 500-532).  On April 24, 2003, the ALJ issued his ruling that there was no twelve-month period, beginning on or prior to Plaintiff's date last insured (DLI), when Plaintiff did not retain the residual functional capacity (RFC)[1] to perform light work similar to the work Plaintiff previously had done as a claims analyst and a legal assistant.  (AR 9-21).  On this basis, the ALJ determined that Plaintiff was not disabled at the fourth sequential step.  (AR 20).

Plaintiff filed a request for review with the Social Security Appeals Council, challenging the ALJ's decision.  (AR 8).  On July 25, 2003, the Appeals Council affirmed the ALJ's decision.  (AR 5-7).  On June 16, 2004, Plaintiff filed the instant action, claiming that (1) the ALJ improperly rejected the opinion of her treating doctor; (2) the ALJ's determination of her RFC was not supported by substantial evidence; and (3) the ALJ improperly found her not to be credible.

---

[1] Residual functional capacity is the most strenuous activity an individual can do despite his or her limitations. 20 C.F.R.   § 416.945.

2

United States District Court

For the Northern District of California

1    II.  Factual History

2        Plaintiff was twenty-six years old at the time of the

3    injury and twenty-eight years old at the time she filed her

4    application for Social Security benefits.  (AR 13).  Plaintiff

5    received sixteen years of education including a bachelor of

6    science degree in holistic nutrition which she completed through

7    a correspondence course.  (AR 503).  The record indicates that

8    from June, 1981 to June, 1997, Plaintiff worked as a legal

9    assistant for her parents who are "paralegals."  (AR 92, 110).[2]

10   From June, 1997 to February, 1998, Plaintiff was employed as a

11   claims analyst for Fort James, Inc., a manufacturer of consumer

12   paper products, where she made collection calls and processed

13   accounts receivable.  (AR 523).  Both Plaintiff's legal

14   assistant position and her claims analyst position are

15   classified as skilled occupations performed at the light

16   exertional level.  (AR 159).  In addition, from 1995 to 1996

17   Plaintiff played golf professionally.  (AR 92, 512).

18       Because of her injury, Plaintiff filed for workers'

19   compensation benefits and received temporary disability benefits

20   through March 7, 2000, when treating physician Clement K. Jones,

21   M.D., issued his final report declaring Plaintiff restricted to

22   "sedentary work."  He said that she had a fifteen minute sitting

23   tolerance, thirty minute walking tolerance, could occasionally

24   bend or lift with a ten pound lifting capacity, and must avoid

25

26       [2]Although these dates appear on Plaintiff's work history
     report (AR 92) and on the Summary of Past Relevant Work (AR
     110), in 1981 Plaintiff would have been approximately nine years
27   old.

28                                3

squatting, kneeling, crawling, climbing, stooping, and driving. (AR 283-284).

A.  Medical Evidence

After her February 10, 1998 injury, Plaintiff was admitted to the hospital where she stayed for eight days and was treated with traction and medication.  (AR 15).  At that time, Plaintiff was treated by Dr. John A. Carr who diagnosed her with a herniated lumbar disk at L4-5, on the left, with left L5 radiculopathy[3] and who recommended continued conservative treatment.  (AR 112-113).

On March 10, 1998, Dr. San S. Yuan examined Plaintiff before he administered a lumbar epidural steroid injection.  (AR 271).  Dr. Yuan's pre-injection examination showed limited back motion and a positive straight-leg raising test on the left at thirty degrees.  (AR 271).  Dr. Yuan noted that sensory examination of the lower extremities was "normal."  (AR 271). After the injection, Plaintiff continued to experience left buttock and leg pain with numbness in the left foot along the dorsum of the foot on the medial side of the first toe, and left knee pain which coincided with the onset of her back and leg symptoms.  (AR 122).  After the epidural, there are no medical records for a period of almost six months.  On September 3, 1998, Plaintiff was seen by Dr. Kenneth I. Light, a neurosurgeon, complaining of an inability to sit, stand, bend, walk or work.  (AR 299).  Dr. Light recommended back surgery

_____

[3] Radiculopathy is a disorder of the spinal nerve roots. Stedman's Medical Dictionary, 1503 (27th ed. 2000).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

which he described as an anterior diskectomy[4] and fusion at the L4-5 level.  (AR 299).

In November, 1998, Plaintiff saw Dr. Jones for a second opinion.  Dr. Jones concurred with Dr. Light as to the need for back surgery, but disagreed as to the type of surgery; Dr. Jones recommended that Plaintiff undergo a left L4-5 laminotomy[5] and diskectomy, a more conservative surgery than the disk fusion proposed by Dr. Light.  (AR 296-298).  On December 7, 1998, Plaintiff underwent a diskectomy performed by Dr. Jones.  (AR 121-125).  Dr. Jones' February 16, 1999 post-operative report indicates that Plaintiff did very well until two months after the surgery when she noticed worsening numbness and pain in her left leg and foot.  (AR 294).  At that time, Plaintiff complained to Dr. Jones of decreased sensation in the left L5 dermatome, weakness in her left EHL tendon, and severe leg pain.  (AR 294).  During Dr. Jones' February 16, 1999 examination, he found Plaintiff had a positive tripod sign with left straight leg raise while sitting and that all passive ankle dorsiflexion or straight leg raise tension tests produced severe leg pain which was only relieved when the knee and hip were simultaneously flexed.  (AR 294).  Dr. Jones recommended that Plaintiff undergo a gadolinium enhancer lumbar spine MRI.  (AR

---

[4] A diskectomy, also spelled discectomy, is an excision, in part or whole, of an intervertebral disk.  Stedman's Medical Dictionary, 508 (27th ed. 2000).

[5] A laminotomy is an excision of a portion of a vertebral lamina in which the intervertebral foramen is enlarged by removal of a portion of the lamina.  Stedman's Medical Dictionary, 964 (27th ed. 2000).

294).

In April, 1999, Dr. Jones noted that Plaintiff continued to have left lower back, buttock, and left leg symptoms but they "are not as severe as those preoperatively." (AR 292). There were no sciatic tension signs, and Plaintiff was able to perform straight-leg raising while supine without any back or leg pain but she still complained of leg numbness. (AR 292).

From May 24, 1999 through July 19, 1999, Plaintiff attended a program at Guardian Rehabilitation Hospital where she received comprehensive pain management including occupational therapy, biofeedback, physical therapy and psychosocial intervention. (AR 143). During this period, she also received occupational therapy at Golden State Rehabilitation Hospital. (AR 130-141).

In June, 1999, Dr. Jones noted that Plaintiff was taking no medications for pain, and was doing well in the pain management program. (AR 290). Dr. Jones noted that Plaintiff was able to stand and walk on her heels and toes. (AR 290). In October, 1999, Dr. Jones reported that Plaintiff had only mild weakness in her left foot and ankle. (AR 287). In December, 1999, one year after surgery, Dr. Jones reported that Plaintiff was able to walk on her heels and toes, but seemed to "lack endurance." (AR 285). At that time, Plaintiff reported chronic intermittent left leg sciatica,[6] and stated that she had only a ten minute

---

[6] Sciatica is pain in the lower back and hip radiating down the back of the thigh into the leg, initially attributed to sciatic nerve dysfunction, but now known usually to be due to a herniated lumbar disk compromising a nerve root, most commonly the L5 or S1 root. Stedman's Medical Dictionary 1602 (27th ed. 2000).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  sitting tolerance.  (AR 285).  In his March 7, 2000 report for
2  Plaintiff's workers' compensation claim, as noted previously,
3  Dr. Jones reported pervasive evidence of muscle weakness and
4  that Plaintiff was limited to "sedentary" work.  (AR 283-84).
5  In his last report of record, dated September 25, 2001, Dr.
6  Jones noted that Plaintiff's straight-leg raising test was
7  negative and Plaintiff was able to walk normally on her heels
8  and toes despite evidence of motor weakness and decreased
9  sensation in the left L5 and S1 dermatome.  (AR 460).

10      In June, 2000, State Disability Determination Services
11 (DDS) Medical Consultant John Vaillancourt, and State agency
12 physician Samuel McFadden, M.D., reviewed the evidence in the
13 record and determined Plaintiff's RFC to be that she could lift
14 ten pounds frequently, twenty pounds occasionally, and stand,
15 walk and sit for six hours, with some postural restrictions.
16 (AR 367-374).

17      B.  Hearing and Determination

18      At her April 3, 2003 hearing before the ALJ, Plaintiff told
19 him that she was currently working part-time at Starbucks and
20 was claiming a closed period of disability from February 19,
21 1998, the date of her injury, to May 25, 2002.  (AR 501).  The
22 ALJ determined that Plaintiff met the disability insured status
23 requirements of the Act on the alleged onset of disability date
24 of February 10, 1998.  (AR 13).  However, he noted that
25 Plaintiff's disability insured status expired on September 30,
26 1999 which meant that  Plaintiff would qualify for benefits only
27 if her disability had begun on or prior to September 30, 1999,

28

United States District Court

For the Northern District of California

1  the date last insured (DLI) and continued for twelve consecutive

2  months thereafter.  (Id.)

3      In his written decision, the ALJ employed the five-step

4  sequential process to evaluate Plaintiff's Social Security

5  Administration (SSA) claim of disability.  20 C.F.R.

6  §§ 404.1520(b)-(f).[7]  At the first step the ALJ found that

7  Plaintiff had not performed any "substantially gainful activity"

8  (SGA) during the closed period at issue.

9      At step two, the ALJ found that there was sufficient

10  evidence to establish that Plaintiff suffered from a "severe"

11  medically determinable impairment which could reasonably be

12  expected to produce some degree of low back and left leg pain.

13  (AR 14)

14      At step three, the ALJ looked at the severity of the

15  Plaintiff's musculoskeletal impairment from February 19, 1998 to

16  _____

17      [7] In order to determine whether a plaintiff is disabled, the
    SSA regulations provide a five-step sequential process.  The
18  five steps of the inquiry are (1) Is the plaintiff presently
    working in a substantially gainful activity?  If so, then the
19  plaintiff is not disabled within the meaning of the Social
    Security Act.  If not, proceed to step two.  (2) Is the
20  plaintiff's impairment severe?  If so, proceed to step three.
    If not, then the plaintiff is not disabled.  (3) Does the
21  impairment "meet or equal" one of a list of specific impairments
    described in 20 C.F.R. Part 220, Appendix 1?  If so, then the
22  plaintiff is disabled.  If not, proceed to step four.  (4) Is
    the plaintiff able to do any work that he or she has done in the
23  past?  If so, then the plaintiff is not disabled.  If not,
    proceed to step five.  (5) Is the plaintiff able to do any other
24  work?  If so, then the plaintiff is not disabled.  If not, then
    the plaintiff is disabled.  Bustamante v. Massanari, 262 F.3d
25  949, 953 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520,
    416.920).
26      The plaintiff maintains the burden of proof for steps one
    through four.  However, should an inquiry proceed to step five,
27  the burden then shifts to the Commissioner.

28

May 25, 2002 and found that the medical evidence failed to show that all of the relevant listing criteria were present for twelve continuous months beginning on or prior to the DLI of September 30, 1999.  (AR 18).

The ALJ then proceeded to consider step four of the SSA sequential evaluation which involved an assessment of the claimant's RFC during the period at issue.  It was at this fourth step of sequential evaluation that the ALJ reached his determinative finding that Plaintiff was "not under a 'disability' as defined in the Act, at any time on or prior to the expiration of her insured status on September 30, 1999" (AR 21), and therefore "not entitled to a period of disability or disability insurance benefits under . . . the Social Security Act."  AR 21.

The ALJ considered Dr. Jones' March 7, 2000 report in which he indicated that Plaintiff was limited to sedentary work and restricted to fifteen minutes of sitting, thirty minutes of walking, ten pounds of lifting, and no squatting, kneeling, crawling, climbing, stooping, or driving.  (AR 283-284).  The ALJ rejected Dr. Jones' opinion based on the fact that the opinion was given in the workers' compensation context which, according to the ALJ, is inapplicable to a Social Security determination and because Dr. Jones relied significantly on Plaintiff's own statements rather than on any objective diagnostic findings.

The ALJ also considered that during the closed period at issue Plaintiff (1) continued to play golf on a regular basis

United States District Court

For the Northern District of California

1   (noting that Plaintiff testified she got "tired after nine

2   holes");      (2) vacationed in Hawaii three times; (3) visited

3   her parents in Los Angeles multiple times; (4) drove a car on a

4   frequent basis; and (5) went out to dinner in various

5   restaurants.  (AR 18).  The ALJ noted that, on a number of

6   occasions, Plaintiff cancelled her therapy sessions to go to

7   weddings, baseball games, and a San Francisco art fair (AR 18-

8   19) and at the time Plaintiff filed her request for a hearing in

9   January, 2001, she reported that she had begun attending classes

10  at Diablo Valley College.  (AR 18).

11      The ALJ relied primarily upon the assessment of Plaintiff's

12  RFC provided by DDS Specialist John Vaillancourt, and State

13  agency physician Samuel McFadden, M.D., dated June, 2000, which

14  stated that Plaintiff could lift ten pounds frequently, twenty

15  pounds occasionally, and stand, walk and sit for six hours, with

16  some postural restrictions.  (AR 367-374).  The ALJ determined

17  that this RFC allowed Plaintiff to perform light work[8] as she had

18  done in the past as a claims analyst and a legal assistant.  The

19  ALJ also considered the fact that Plaintiff took no medications

20  for pain and that her testimony at the hearing was "vague and

21  _____

22      [8] "Light work involves lifting no more than 20 pounds at a
    time with frequent lifting or carrying of objects weighing up to
23  10 pounds.  Even though the weight lifted may be very little, a
    job is in this category when it requires a good deal of walking
24  or standing, or when it involves sitting most of the time with
    some pushing and pulling of arm or leg controls.  To be
25  considered capable of performing a full or wide range of light
    work, you must have the ability to do substantially all of these
26  activities.  If someone can do light work, we determine that he
    or she can also do sedentary work, unless there are additional
27  limiting factors such as loss of fine dexterity or inability to
    sit for long periods of time."  20 C.F.R. § 404.1567 (1987).

28                                  10

unresponsive; she always seemed to be shading the truth." (AR 20). The ALJ reasoned that, to the extent Plaintiff alleged that her symptoms precluded her from doing the range of light work that she had previously performed, given her "myriad [of] social activities during the period at issue, a limitation to sedentary work [as suggested by treating doctor Jones] seems much too restrictive." (AR 18). The ALJ, therefore, found Plaintiff not disabled at step four of the sequential process. (AR 20).

LEGAL STANDARD

I.   Overturning a Denial of Benefits

A court cannot set aside a denial of benefits unless the Commissioner's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986); Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

just the evidence supporting the decision of the ALJ.  Walker v. Matthews, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  In short, a court must weigh the evidence that supports the Commissioner's conclusions and that which does not.  Martinez, 807 F.2d at 772.

If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be upheld even when there is evidence on the other side, Hall v. Secretary, 602 F.2d 1372, 1374 (9th Cir. 1979), or when the evidence is susceptible to more than one rational interpretation, Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by substantial evidence, the findings of the Commissioner as to any fact will be conclusive.  42 U.S.C. § 405(g); Vidal v. Harris, 637 F.2d 710, 712 (9th Cir. 1981).

II.  Establishing Disability Under the Social Security Act

Under the Social Security Act, "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423 (d)(1)(A).  The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful

work." 42 U.S.C. § 423(d)(2)(A).  In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques." 42 U.S.C. § 423(d)(3).

A request for benefits for a closed period requires the decision maker to determine that a new applicant for disability benefits was disabled, that is the applicant was unable to engage in any substantial gainful employment for a continuous period of not less than twelve months, for a finite period of time which started and stopped prior to the date of decision, or, as the case may be, started on or before the DLI and stopped prior to the date of decision. Mendoza v. Apfel, 88 F. Supp. 2d 1108, 1112 (C.D. Cal. 2000); Shepherd v. Apfel, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999).  Thus, in a closed period case, the disability decision and the cessation decision are made in the same document. Id.  As noted above, a determination of disability requires the claimant to be unable to engage in any substantial gainful employment, including even light and sedentary work, for a continuous period of not less than twelve months.  Once the claimant is found to be disabled, a presumption of continuing disability arises, and the Commissioner bears the burden of producing evidence sufficient to rebut this presumption under the medical improvement standard as defined in the Social Security Regulations. Mendoza, 88 F. Supp. 2d at 1113.

DISCUSSION

Plaintiff contends that (1) her testimony should not be

13

discredited in light of her social activities because her
activities were sporadic and not indicative of an ability to do
sustained work; (2) the ALJ improperly rejected the opinion of
Dr. Jones, her treating doctor; and (3) the ALJ improperly found
that she could perform light work during the entire four-year
closed period at issue.

For the reasons stated below, the Court affirms the
Commissioner's decision.

I. Credibility

    A. Legal Standard

    In Cotton v. Bowen, 799 F.2d 1402 (9th Cir. 1986), the Ninth
Circuit developed a threshold test to determine the credibility
of a claimant's subjective symptom testimony.  Under Cotton, a
claimant "must produce objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged.'"  Bunnell v.
Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (quoting
Cotton, 799 F.2d at 1407-08); see also Smolen v. Chater, 80 F.3d
1273, 1282 (9th Cir. 1996).  Cotton requires "only that the
causal relationship be a reasonable inference, not a medically
proven phenomenon."  Smolen, 80 F.3d at 1282.  Therefore, a
claimant is not required to produce objective medical evidence
of the pain itself or its severity.  Id. (citing Bunnell, 947
F.2d at 347-48).  "It is improper as a matter of law for an ALJ
to discredit excess pain testimony solely on the ground that it
is not fully corroborated by objective medical findings."
Cotton, 799 F.2d at 1407; Fair v. Bowen, 885 F.2d 597, 601 (9th

14

1   Cir. 1989).

2       Once    a claimant meets the Cotton test, "the

3   Commissioner may not discredit the claimant's testimony as to

4   subjective symptoms merely because they are unsupportable by

5   objective evidence.  Unless there is affirmative evidence

6   showing that the claimant is malingering, the Commissioner's

7   reason for rejecting the claimant's testimony must be 'clear and

8   convincing.'"  Lester, 81 F.3d at 834 (quoting Swenson v.

9   Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)); Smolen, 80 F.3d at

10  1281.  In determining whether a plaintiff's testimony concerning

11  the severity of his symptoms is credible, the ALJ may properly

12  consider: (1) ordinary techniques of credibility evaluation,

13  such as the plaintiff's reputation for lying, prior inconsistent

14  statements concerning the symptoms, and other testimony by the

15  plaintiff that appears less than candid;       (2) unexplained

16  or inadequately explained failure to seek treatment or to follow

17  a prescribed course of treatment; and (3) the plaintiff's daily

18  activities.  Smolen, 80 F.3d at 1273.

19      When outlining the findings supporting a conclusion that a

20  plaintiff's testimony is not credible, the ALJ must consider

21  "all of the available evidence" in analyzing the severity of the

22  claimed pain.  SSR 88-13.  Factors to be analyzed include: (1)

23  the nature, location, onset, duration, frequency, radiation, and

24  intensity of any pain; (2) precipitating and aggravating

25  factors; (3) type, dosage, effectiveness and adverse side

26  effects of any pain medications; (4) treatment, other than

27  medication, for relief of pain; (5) functional restrictions; and

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

(6) the plaintiff's daily activities.  Id.; see Fair, 885 F.2d at 603 (types of activities ALJ may rely on to find pain allegations credible include the daily activities performed by plaintiff and whether plaintiff sought or followed treatment); Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (finding rejection of plaintiff's pain testimony justified where plaintiff had little evidence of spinal abnormalities, had not used strong pain medication, had not participated in pain management or physical therapy, and limited daily activities by choice not necessity).  However, medical evidence is still relevant in determining the severity of a plaintiff's alleged pain and its disabling effects.  20 C.F.R.    § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

B. Analysis

At the hearing, Plaintiff testified that she had, among others, the following disabling symptoms: chronic low back pain radiating into the left buttock and left leg; constant numbness in the left leg with a pins-and-needles sensation; left leg weakness and instability; and disturbed sleep due to pain.  She also described her tolerance for physical activity as follows: sitting fifteen minutes, standing in one place for ten to fifteen minutes, and walking for thirty minutes without a break.

Although the ALJ did not discuss whether Plaintiff met the Cotton threshold test, assuming that Plaintiff was able to meet that test, the ALJ has produced clear and convincing reasons for rejecting Plaintiff's testimony.  Although the ALJ did not explicitly discuss the credibility factors under Smolen, the

ALJ's discussion of Plaintiff's testimony suggests that he rejected her subjective symptom testimony for two reasons: (1) medical records did not corroborate her testimony; and (2) her numerous social activities during the time she claimed to be disabled belied her complaints of pain.

Regarding the medical records, the ALJ noted that they did not corroborate Plaintiff's testimony of chronic pain. For instance, on March 10, 1998, Dr. Yuan opined that sensory examination of Plaintiff's lower extremities was normal. Also, Dr. Jones' physical examination in November, 1998 revealed that Plaintiff's deep tendon reflexes at the knees and ankles were normal bilaterally. The ALJ pointed out that Plaintiff's post-operative reports from Dr. Jones showed that Plaintiff did very well after her December 7, 1998 surgery. In June, 1999, Dr. Jones observed that Plaintiff was able to stand and walk on her heels and toes and, although there was some residual mild weakness in her left leg, "she had 60% normal sensation in the left L5 dermatome compared to the right." (AR 16). In a report dated October, 1999, Dr. Jones concluded that Plaintiff had only mild weakness in her left foot and ankle and normal sensation in all dermatomes bilaterally. Furthermore, an EMG study performed in July, 2000 was within normal limits, and Dr. Jones' last report dated September 25, 2001 noted that Plaintiff was able to walk on her heels and toes normally. For these reasons, the ALJ concluded that the medical records did not corroborate Plaintiff's testimony.

Moreover, the ALJ noted that Plaintiff's "allegations of

United States District Court

For the Northern District of California

chronic pain and dysfunction are undermined by her admissions concerning her social activities." (AR 19). At the hearing, Plaintiff admitted that during the closed period she frequently engaged in such activities as playing golf, vacationing in Hawaii, and driving a car. At one point, the ALJ noted, Plaintiff cancelled a therapy session to attend an art exhibit in San Francisco. The ALJ also observed that the file demonstrated that Plaintiff was active despite her alleged pain. For instance, Plaintiff began to take a class at Diablo Valley College. The ALJ pointed out, as did the DDS consulting doctors, that Plaintiff's admitted ability to attend college classes and engage in other activities such as traveling to Hawaii, was inconsistent with her allegation that pain prevents her from sitting longer than ten minutes. (AR 18). Examining Plaintiff's social activities, the ALJ concluded:

> While it is true that claimant typically reported increased pain after doing these activities, she continued doing the activities anyway, which leads me to conclude that her allegations of pain were exaggerated and were perhaps voiced for the benefit of her workers' compensation claim. In finding her symptom allegations not credible for the period at issue, I also rely upon the fact that she took no medications for pain.

(AR 19). In addition, the ALJ noted that, during the hearing, Plaintiff's testimony was vague and unresponsive and she always seemed to be shading the truth.

The Court finds that ALJ has provided clear and convincing reasons for rejecting Plaintiff's testimony and that the ALJ's conclusion that Plaintiff's testimony is not credible is supported by substantial evidence in the record.

II. Treating Physician

     A. Legal Standard

     The medical opinion of a treating physician is entitled to special weight.  <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989).  As a general rule, "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  As the Ninth Circuit has explained, "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1989).

     Where the treating physician's opinion is not contradicted by an examining physician, that opinion may be rejected only for "clear and convincing reasons."  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1102 (9th Cir. 1999); <u>Lester</u>, 81 F.3d at 830.

     The opinion of a non-examining physician alone will not constitute substantial evidence that justifies the rejection of the opinion of a treating physician.  <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 n.4 (9th Cir. 1990); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984).  However, the opinion of a non-examining physician in conjunction with medical evidence and contradictory reports from examining physicians may constitute substantial evidence for rejecting a treating physician's opinion.  <u>Magallanes</u>, 881 F.2d at 751-52; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1042-43 (9th Cir. 1995).

     B. Analysis

     Because Dr. Jones' opinion was not contradicted by the

**United States District Court**

For the Northern District of California

opinion of an examining physician, the ALJ had to provide clear and convincing reasons for rejecting it. The ALJ's decision to discredit Dr. Jones' report is supported by clear and convincing reasons based on substantial evidence in the record. The ALJ noted that (1) Dr. Jones' reports seem internally inconsistent; (2) they were contradicted by the opinions of DDS Specialist Vaillancourt and Dr. McFadden, who found Plaintiff could perform light work;

(3) Dr. Jones' designation of "sedentary" to describe Plaintiff's condition is a specialized workers' compensation rating which is inapplicable to a Social Security disability determination; and

(4) Dr. Jones' statement regarding Plaintiff's abilities relied significantly on Plaintiff's own statements, rather than objective medical measures.

The ALJ pointed out the following internal inconsistencies in Dr. Jones' reports. Although Dr. Jones maintained that Plaintiff's condition was permanent and stationary, he also observed, in April, 1999, that "there were no sciatic tension signs, and the claimant was able to perform straight-leg raising while supine without any back or leg pain." In June, 1999, Dr. Jones also noted that Plaintiff was taking no medications for pain, was doing well in the pain management program, and was able to walk on her heels and toes. Furthermore, in Dr. Jones' March 7, 2000 report to the workers' compensation unit, he opined that Plaintiff could perform only sedentary work but at the same time he indicated that she only had a fifteen minute

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

sitting tolerance.  In another report dated September 25, 2001, Dr. Jones concluded that Plaintiff was able to walk on her heels and toes normally.

In contrast to Dr. Jones' conclusion that Plaintiff's condition was permanent and stationary, Drs. Vaillancourt and McFadden reviewed the record and concluded that Plaintiff could lift ten pounds frequently, and walk and sit for six hours.  The ALJ concluded that, in light of Plaintiff's social activities such as playing golf, taking long-plane rides for vacation, and driving,  the consulting DDS Specialists' opinions more accurately reflected Plaintiff's physical limitations.

The ALJ was correct that he was not required to accept the conclusion in Dr. Jones' March, 2000 report that Plaintiff was restricted to "sedentary" work because that conclusion was made in a workers' compensation context.  See DesRosiers v. Sec'y of Health & Human Serv., 846 F.2d 573, 576 (9th Cir. 1988) (explaining that categories of work under Social Security disability scheme are measured differently than those under California workers' compensation system).

Finally, the ALJ noted that Dr. Jones' conclusions regarding Plaintiff's abilities relied significantly on Plaintiff's own statements, rather than any objective measure.  See Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996) (a treating or examining physician's opinion may properly be disregarded when it is based to a large extent on a claimant's discredited subjective complaints).

For the above reasons, this Court concludes that the ALJ

United States District Court
For the Northern District of California

1    provided clear and convincing reasons supported by substantial

2    evidence in the record for rejecting Dr. Jones' opinion.

3    III. Closed Period

4         Plaintiff argues that her condition changed during the

5    closed period and that the ALJ improperly determined her

6    condition for the entire period based on the DDS medical

7    consultants' report dated June 26, 2000, that reflected her

8    condition "well after the injury-to-surgery period."

9         As noted above, although Plaintiff seeks SSA disability

10   benefits for a closed period from February 10, 1998 to May 25,

11   2002, Plaintiff's DLI was September 30, 1999.  Therefore, in

12   order to qualify for benefits, the ALJ would have to find that

13   Plaintiff was not able to engage in substantial gainful

14   employment for a continuous twelve-month period beginning on or

15   before September 30, 1999.  At step four of the five-step

16   process, Plaintiff bears the burden of proving that she was not

17   capable of engaging in her past relevant work for such a

18   continuous twelve-month period.

19        The ALJ's conclusion that Plaintiff was not disabled during

20   the closed period is supported by substantial evidence and the

21   record shows that Plaintiff has not met her burden of proof.

22        One month after her injury, in March, 1998, Dr. Yuan treated

23   Plaintiff with a lumbar epidural steroid injection.  Dr. Yuan's

24   March 10, 1998 pre-injection examination indicated that

25   Plaintiff had limited back motion but that "sensory examination

26   of the lower extremities was normal."  Although the injection

27   did not provide Plaintiff any lasting relief from pain, after

28                                    22

**United States District Court**
For the Northern District of California

the injection there are no medical records for a period of almost six months, nor any medical evidence that she was disabled during this period.  On September 3, 1998, Plaintiff's medical records continue with an examination by Dr. Light who recommended back surgery.  On December 7, 1998, Dr. Jones performed the back surgery.  Dr. Jones' February 17, 1999 post-operative report indicates that Plaintiff was doing fairly well for two months after the surgery.

However, on or about February 10, 1999, Plaintiff began experiencing numbness and pain in her left leg.  Dr. Jones' April 13, 1999 examination revealed that Plaintiff did not have any sciatic tension signs and was "able to perform straight-leg raising while supine without any back or leg pain."  Dr. Jones reported in June, 1999, that Plaintiff was taking no medications for pain and in October, 1999, that Plaintiff had only mild weakness in her left foot and ankle and she had normal sensation in all dermatomes bilaterally.  Additionally, Plaintiff's social activities since May, 1999 belied her testimony of subjective pain and physical limitations.  As noted, her DLI occurred on September 30, 1999.

Because after Plaintiff's injury there is a six month period in which she apparently did not seek medical treatment and because, in the two months following her December, 1998 surgery, Plaintiff was doing fairly well, she has not established that she was disabled for the continuous twelve month period following her injury.  Moreover, although she experienced numbness and pain beginning about two months after her December

7, 1998 surgery, these symptoms diminished by June, 1999 when Dr. Jones reported that although Plaintiff had some residual mild weakness in her left leg tendons, she was taking no pain medication, was able to stand and walk on her heels and toes and the sciatic tension tests were negative bilaterally. Plaintiff's improvement continued as indicated in Dr. Jones' October, 1999 examination.  Plaintiff's recovery is supported by the list in the ALJ's report of Plaintiff social activities which began in approximately May, 1999.

Accordingly, the Court finds that the record supports the ALJ's finding that Plaintiff was not disabled for any continuous twelve-month period beginning on or prior to September 30, 1999.

CONCLUSION

For the foregoing reasons, Plaintiff's motions for summary judgment and to remand (Docket No. 5) are DENIED and the Defendant's cross motion for summary judgment (Docket No. 8) is GRANTED.

IT IS SO ORDERED.

Dated: 5/18/05                           /s/ CLAUDIA WILKEN
                                        CLAUDIA WILKEN
                                        United States District Judge

United States District Court
For the Northern District of California

24